## O'BOYLE et al. v. THE VISITOR et al.

## THE CATHERINE O'BOYLE.

### THE AXELDYK.

#### No. 345 of 1949.

United States District Court
E. D. Pennsylvania.

Nov. 1, 1951.

John A. Friedrich, Krusen, Evans & Shaw, Philadelphia, Pa., proctor for libellant.

Conlen, LaBrum & Beechwood, Philadelphia, Pa., attorneys for respondent tug Visitor.

Benjamin F. Stahl, Jr., Clark, Brown, McCown, Fortenbaugh & Young, Philadelphia, Pa., and Burlingham, Veeder, Clark & Hupper, New York City, proctors for claimant, as owner of The Axeldyk.

CLARY, District Judge.

This is an action in rem by the Owners of the Tank Scow Catherine O'Boyle against the Tug Visitor, which had it in tow, and the S. S. Axeldyk with which The Catherine O'Boyle collided in the Delaware River, and was damaged. The amount of the damage has been agreed upon by the parties and I am asked to determine only the question of the respective liability of

the S. S. Axeldyk and the Tug Visitor. From pleadings and proof I make the following:

## Findings of Fact

1. On April 7, 1948, the S. S. Axeldyk, a vessel 439 feet long and 62 feet wide, anchored shortly before 11:00 a. m. in the Delaware River to the east of the ship channel in Anchorage No. 12 off Kaighn Point, New Jersey.

2. After anchoring by her starboard anchor, the ship was heading 140° with the following bearings: City Hall, Philadelphia 319°; Kaighn Point, Camden 40°.

3. At about 12:00 o'clock on April 7, 1948, the Tug Visitor, 62 feet in length, was towing the Tank Scow Catherine O'Boyle, which is 210 feet long and 43 feet wide, up the Delaware River in the vicinity of Kaighn Point. The barge was being towed on a hawser 200 feet long.

4. The Catherine O'Boyle was riding directly astern of the tug. The tide was flood and it was not running heavy. The wind was off the New Jersey shore.

5. As The Visitor and her tow came around the bend above Greenwich Point, the tug and tow were on a course which, if continued, would have taken them past the starboard side of the anchored S. S. Axeldyk with ample clearance between the two vessels.

6. As she approached the S. S. Axeldyk, the Tug Visitor changed her course to starboard and attempted to pass across the bow of the S. S. Axeldyk. The speed of the tug and tow was about three to four knots.

7. At the time the vessel Axeldyk was anchored below Kaighn Point with about 60 fathoms of chain out and her anchor ball hoisted. She was lying on an angle in the river with her stern partly in the channel and her bow out of the channel in the direction of the New Jersey shore. At the time, pursuant to instructions from the Captain she was turning her propeller at five revolutions per minute.

8. Five revolutions per minute of the propeller of The Axeldyk would produce a speed in still water of seven-tenths to eight-tenths of a mile per hour.

9. The mate on watch on board the Tug Visitor first observed the S.S. Axeldyk when the vessels were 2,000 feet apart. The S. S. Axeldyk at that time was riding at anchor and the anchor chain extended out from the bow of the vessel.

10. After changing course and proceeding up the river, the tug passed the bow of The Axeldyk approximately 50 yards to the east. At that time the anchor chain of The Axeldyk was straight up and down in the water and her anchor ball was hoisted. There was no one on her bow to indicate she was getting under way.

11. It was not until the tug was passing The Axeldyk that it was first observed that The Axeldyk was moving slowly to the eastward overriding her anchor.

12. No action was taken by any member of the crew of the S. S. Axeldyk to prevent her forward progress or to avoid a collision.

13. The bow of the S. S. Axeldyk struck the port side of the barge causing damage thereto.

14. The Axeldyk was at fault in that her propeller was turning, causing her to move while her anchor ball was hoisted.

15. The Axeldyk was at fault in that her propeller was turning, causing her to move without having someone on watch on the bow.

16. The Tug Visitor was at fault in not keeping a constant lookout and not observing the movement of the Axeldyk at a time when it might have maneuvered to avoid collision.

17. The fault of The Axeldyk contributed 80% to the accident.

18. The fault of the Tug Visitor contributed 20% to the accident.

## Conclusions of Law

1. This Court has jurisdiction of the subject matter and of the parties.

2. The collision between the Tank Scow Catherine O'Boyle and the S. S. Axeldyk, with the resulting damage to The

Catherine O'Boyle was caused by the negligence of the persons in charge of both the S. S. Axeldyk and the Tug Visitor.

3. The negligence of those in charge of the S. S. Axeldyk contributed 80% to the collision and the negligence of those in charge of the Tug Visitor contributed 20% to the collision.

4. Since the fault of both the S. S. Axeldyk and the Tug Visitor contributed to the collision the damages must be divided equally between them. American Dredging Company v. United States, 3 Cir., 1949, 174 F.2d 822; G. B. Zigler Co. v. Barker Barge Line, 5 Cir., 1948, 167 F.2d 676.

An appropriate decree may be submitted.